**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CASE NO. 3:16-CV-00299-RLV**

| | |
|---|---|
| JAMES EDWARD BOOKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     **ORDER** |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

      **THIS MATTER IS BEFORE THE COURT** on cross-motions for summary judgment. (Docs. 11, 13). Plaintiff has filed a Response to Defendant's Motion for Summary Judgment. (Doc. 15). Also before the Court is Plaintiff's Motion for Remand pursuant to sentence six of 42 U.S.C. § 405(g). (Doc. 12). Defendant has not filed a response to Plaintiff's Motion for Remand and the time to do so has elapsed. For the reasons that follow, the Plaintiff's Motion for Remand under sentence six of 42 U.S.C. § 405(g) (Doc. 12) is **DENIED**, Plaintiff's Motion for Summary Judgment (Doc. 11) is **GRANTED**, the Defendant's Motion for Summary Judgment (Doc. 13) is **DENIED**, the decision of the Commissioner is **VACATED**, and this matter is **REMANDED** for further administrative consideration pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    BACKGROUND

      In 2013, Plaintiff James Edward Booker filed an application for disability insurance benefits under Title II of the Social Security Act, alleging an inability to work due to a disabling condition commencing on July 16, 2010. (Tr. 79, 164-67). The Commissioner of Social Security ("Commissioner" or "Defendant") initially denied Plaintiff's applications on July 15, 2013 and,

upon reconsideration, again denied the application in October 2013. (Tr. 79, 93-96, 98-101). Plaintiff requested a hearing and, on September 28, 2015, appeared before Administrative Law Judge Ellen Parker Bush ("ALJ Bush") for said hearing. (Tr. 12-53, 79).

Through a written decision, ALJ Bush concluded that Plaintiff was not disabled. (Tr. 79-88). At Step One, ALJ Bush found that Plaintiff engaged in substantial gainful activity for a period of time following his alleged disability onset date. (Tr. 81; *see also* Tr. 24-26 (hearing testimony where Plaintiff acknowledges working as a security guard after alleged disability onset date)). Specifically, ALJ Bush concluded that Plaintiff engaged in substantial gainful activity as a security guard through September 2011. (Tr. 81). ALJ Bush also noted that Plaintiff, after being terminated from his security guard job, performed work as a brick layer. *Id.* However, although ALJ Bush found that Plaintiff had "regular work lined up" as a brick layer or brick layer supervisor, ALJ Bush concluded that Plaintiff's brick laying work did not amount to substantial gainful activity. *Id.* Accordingly, ALJ Bush proceeded with the five-step analysis by considering a potential disability period of September 2011 through June 30, 2015, Plaintiff's "date last insured." (Tr. 79).

At Step Two, ALJ Bush found that Plaintiff's degenerative disc disease, alone and certainly when considering Plaintiff's non-severe impairments, qualified as a severe impairment. (Tr. 82). ALJ Bush, however, concluded that Plaintiff's diabetes mellitus and peripheral neuropathy, left wrist and thumb pain, right shoulder pain, left hip pain, hypertensive retinopathy, history of hypertension, gastro-esophageal reflux disease, left scrotal abscess, benign prostate hyperplasia, urinary tract infection, and colon polyps were all non-severe impairments. (Tr. 82-83). Specific to Plaintiff's diabetes mellitus and peripheral neuropathy, ALJ Bush noted an April 2014 nerve conduction study diagnosing Plaintiff with mild neuropathy. (Tr. 82). Nonetheless, ALJ Bush

relied on Plaintiff's failure to comply with his treatment plan and on subsequent exam findings that showed little change in Plaintiff's status and that indicated Plaintiff was "level 1 – low risk," to conclude that Plaintiff's diabetes mellitus and peripheral neuropathy did not amount to a severe impairment. *Id.* In so concluding, ALJ Bush also gave "great weight" to the opinions of Dr. Albert Whitaker, Jr., MD, a consultative examiner, and Dr. Ellen Huffman-Zechman, MD, a state agency medical consultant, who respectively opined that Plaintiff's diabetes mellitus and peripheral neuropathy resulted in no limitations or only non-severe limitations. *Id.* Finally, ALJ Bush noted the lack of any medical opinion contradicting the opinions of Dr. Whitaker and Dr. Huffman-Zechman. *Id.*

At Step Three, ALJ Bush concluded that Plaintiff did not meet any of the Listings in 20 CFR Part 404, specifically noting that she considered Listings 1.04, 11.14, 9.00, and Social Security Ruling ("SSR") 14-2p. (Tr. 83-84). ALJ Bush proceeded to form Plaintiff's residual functional capacity, first summarizing Plaintiff's hearing testimony and medical records. (Tr. 84-87). ALJ Bush found Plaintiff's statements about his pain, symptoms, and resulting limitations "not entirely credible" because (1) the medical evidence was "not entirely consistent" with Plaintiff's statements; (2) of Plaintiff's demeanor when testifying about his daily activities; (3) Plaintiff's testimony was inconsistent with his ability to perform some regular brick laying work and with his daily activities; and (4) there was no record of Plaintiff reporting significant limitations in his daily life to his doctors. (Tr. 84-87).

As to Plaintiff's medical records, ALJ Bush focused primarily on Plaintiff's back condition. (Tr. 85-86). ALJ Bush noted that Plaintiff did not report any back pain until February 2013 and, thereafter, did not complain of back pain during doctor visits between February 2013 and September 2013. (Tr. 85). A June 2013 consultation exam by Dr. Whitaker noted that Plaintiff

stood and sat with ease and documented that Plaintiff had full range of motion, intact motor strength, and no tenderness. *Id.*; (*see also* Tr. 387-88). An exam note from a September 2013 doctor visit showed Plaintiff experienced shoulder, wrist, and thumb tenderness but did not reflect any abnormal findings as to Plaintiff's back and did not include any medication prescriptions for Plaintiff's back condition. (Tr. 85; *see also* Tr. 399-404). Dr. Huffman-Zechman's October 2013 state agency opinion noted that Plaintiff suffered from degenerative disc disease with occasional low back pain and concluded that Plaintiff experienced a postural limitation restricting Plaintiff to only frequent stooping. (Tr. 85; *see also* Tr. 72). An April 2014 electromyelogram showed no lumbar radiculopathy or acute or chronic denervation changes to Plaintiff's back. (Tr. 85; *see also* Tr. 485). An exam note from a May 2014 doctor visit reflected no treatment for Plaintiff's back and reflected that Plaintiff was "walking fine." (Tr. 85; *see also* Tr. 482). Finally, an exam note from a March 2015 doctor visit noted that Plaintiff had full range of motion in his back. (Tr. 85-86; *see also* Tr. 539).

ALJ Bush noted a possible change in Plaintiff's back condition in mid-June 2015, when Plaintiff reported a sudden onset of severe lower back pain radiating down his left leg that was not precipitated by any injury. (Tr. 86; *see also* Tr. 571). ALJ Bush noted that Plaintiff walked with an abnormal gait during his June 15, 2015 doctor visit but that he did not use an assistive device and that he did not have any point tenderness in his back. (Tr. 86; *see also* Tr. 572). ALJ Bush also summarized Plaintiff's August 11, 2015 magnetic resonance imaging ("MRI"), noting that the MRI showed (1) "mild degenerative subluxations at L4-S1," (2) severe degenerative disc disease with an annular bulge and facet arthrosis at L5-S1, (3) moderate degenerative disc disease with annular bulge and facet arthrosis producing moderate central spinal stenosis in L4-L5, (4) moderate degenerative disc disease with annular bulge and facet arthrosis producing mild central

spinal stenosis in L3-L4, and (5) mild degenerative disc disease with annular bulge at L-L3. (Tr. 86; *see also* Tr. 584-87). ALJ Bush, however, noted that Plaintiff's complaints of back pain did not commence until shortly before his last date of insurance and that the MRI was taken after Plaintiff's last date of insurance. (*See* Tr. 86). Based on the MRI, ALJ Bush altered Dr. Huffman-Zechman's opinion by increasing the restriction for stooping from only frequent stooping to only occasional stooping. *Id.* ALJ Bush, however, did not add any further restrictions based on the MRI results. (Tr. 86-87). Accordingly, ALJ Bush established that, as of Plaintiff's date last insured on June 30, 2015, Plaintiff had the residual functional capacity to perform medium work with a restriction for only occasional stooping. (Tr. 84, 87).

At Step Four, ALJ Bush, relying on a vocational expert, determined that Plaintiff could perform his past relevant work as a security guard, DICOT 372.667-034. (Tr. 87-88). Accordingly, ALJ Bush concluded that Plaintiff was not disabled for purposes of receiving disability insurance benefits under Title II of the Social Security Act. (Tr. 88). Plaintiff requested that the Appeals Council review ALJ Bush's adverse decision but the Appeals Council denied review. (Tr. 1-4). Plaintiff instituted this action seeking judicial review of the denial of benefits. In his memorandum in support of his motion for summary judgment, Plaintiff raises three intertwined assignments of error: (1) ALJ Bush did not determine Plaintiff's residual functional capacity in accordance with SSR 96-8p; (2) ALJ Bush discounted medical evidence from Plaintiff's June 2015 doctor visit and August 2015 MRI without providing a sufficient explanation; and (3) ALJ Bush did not consider the effects of Plaintiff's degenerative disc disease in combination with the effects of his neuropathy when concluding that Plaintiff could stand for long periods of time. (Doc. 11-1 at 4-9). Plaintiff's memorandum in support of his Motion for Summary Judgment also suggests that ALJ Bush erred at Step Two when she concluded that

Plaintiff's peripheral neuropathy was not a severe impairment and Plaintiff more directly advances

this argument in his Response to the Commissioner's Motion for Summary Judgment.[1]  *See id.* at

9; (*see also* Doc. 15 at 6).  Plaintiff also filed a Motion for Remand under sentence six of 42 U.S.C.

§ 405(g), arguing that treatment records from pain management visits subsequent to ALJ Bush's

decision qualify as "new" and "material" evidence.[2]  (Doc. 12).  This Court will consider Plaintiff's

Motion for Remand before considering Plaintiff's Motion for Summary Judgment because

sentence six of 42 U.S.C. § 405(g) provides a narrower basis for relief than does sentence four of

the subsection.

## II.    DISCUSSION

### A.    Motion for Remand under Sentence Six of 42 U.S.C. § 405(g)

Plaintiff states that treatment records from Caromont Regional Medical Center from April

to June of 2016 warrant remand under sentence six of 42 U.S.C. § 405(g).  (Doc. 12 at 1-2).

Connecting Plaintiff's arguments in his Memorandum in support of his Motion for Summary

Judgment to his statement in his Motion for Remand, Plaintiff seemingly contends that ALJ Bush's

notation that Plaintiff's back pain did not become enhanced until two weeks before Plaintiff's date

---

[1] To the extent that Plaintiff sought to challenge ALJ Bush's Step Two determination regarding whether his peripheral neuropathy qualified as a severe impairment, the Court notes that the issue was not properly identified in the "Issues Presented" section of Plaintiff's Memorandum supporting his Motion for Summary Judgment such that if Plaintiff sought to raise the issue, the Memorandum does not strictly comply with this Court's December 16, 2013 Social Security Briefing Order, (Case No. 3:13-mc-198-FDW; Doc. 1).  The Court further notes that Plaintiff's Memorandum is frequently devoid of citations to the law and lacks proper citations to the record in several places.  (*See* Doc. 11-1 at 1-9).  While these deficiencies might significantly preclude or impede the Court's ability to review a plaintiff's arguments in the majority of cases, Plaintiff's argument regarding ALJ Bush's discounting of his 2015 medical evidence is sufficiently decisive and obvious to allow the Court to proceed based on the submissions and afford Plaintiff relief under sentence four of 42 U.S.C. § 405(g).  Nonetheless, should Plaintiff file a motion seeking attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, the Court may, regardless of whether the Commissioner consents to the motion for fees, consider these deficiencies when determining if the requested fee and the itemized hours spent on this matter are reasonable.

[2] Much like Plaintiff's Memorandum in support of his Motion for Summary Judgment, Plaintiff's Motion for Remand lacks proper citations.  Notably, Plaintiff's Motion for Remand, which barely reaches two pages, neither directs this Court to any particular page within the attached medical records nor quotes or substantively discusses any of the treatment records attached to the Motion.  (*See* Doc. 12 at 1-2).

last insured means that ALH Bush discounted Plaintiff's July and August 2015 medical evidence because Plaintiff's condition did not last for twelve months. *See id.*; (*see also* Doc. 11-1 at 7-8). Plaintiff contends that the record of ongoing treatment at Caromont Regional Medical Center demonstrate that Plaintiff experienced severe back pain for twelve months. (Doc. 12 at 1-2).

Sentence six of 42 U.S.C. § 405(g) states, in pertinent part:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that [1] there is new evidence [2] which is material *and* [3] that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding

(emphasis added). Evidence is "new" where "it is not duplicate or cumulative." *See Wilkins v. Sec., Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* As to "good cause," the burden falls on the proponent of the evidence to establish good cause for not producing the evidence on the administrative level and the bar for establishing good cause is high. *Jones v. Colvin*, 2014 WL 359672, at *10 (W.D. Va. Feb. 3, 2014) (citing *Wooding v. Comm'r of Soc. Sec.*, 2010 WL 4261268, at *4 (W.D. Va. Oct. 29, 2010), *Hammond v. Apfel*, 5 F. App'x 101, 103 (4th Cir. 2001)).

The Caromont Regional Medical Center records are "new" because they were not before ALJ Bush and because they pertain to a course of treatment subsequent to ALJ Bush's adverse benefits determination. (*See* Doc. 12 at 3-15). This Court, however, concludes that remand is not appropriate under sentence six of 42 U.S.C. § 405(g) because the Caromont Regional Medical Center records are not "material" for two reasons. First, contrary to Plaintiff's seeming argument in his Motion for Remand, it is not apparent that ALJ Bush discounted Plaintiff's July and August 2015 medical records because his degenerative disc disease had not lasted for at least twelve months. Contrary to Plaintiff's suggestion, ALJ Bush's decision to increase Plaintiff's restriction

for stooping based on the July and August 2015 medical records shows that ALJ Bush concluded that Plaintiff's back problems had lasted for at least twelve months. Thus, there is not a reasonable possibility that, assuming the new evidence showed that Plaintiff suffered from the degenerative disc disease for a twelve month period starting in June 2015, this fact would alter the administrative decision because it supports a conclusion already implied by ALJ Bush's decision.

Second, the Court's review of the Caromont Regional Medical Center records do not provide any support for Plaintiff's contention that he suffers from limitations–including with respect to his ability to stand and walk—beyond those restrictions ALJ Bush already incorporated into Plaintiff's residual functional capacity. Although the treatment records show that Plaintiff received two steroid injections in his back in April 2016 and that the steroid injections did not have long lasting effect, the summary note from Plaintiff's April 11, 2016 visit reveals that Plaintiff (1) "[a]mbulates without any assistive device"; (2) has [n]o increased pain with extension or flexion of the foot"; (3) "has normal strength"; (4) "has a normal Straight Leg Raise Test" and (5) has a "normal" gait. (Doc. 12 at 8). Similarly, the summary from Plaintiff's most recent visit at Caromont Regional Medical Center includes notations that (1) "[p]atient reports that medications are working satisfactorily and their activity level is acceptable"; (2) "[t]he patient reports sleep and mood are satisfactory"; (3) Plaintiff denied side effects from medication and generally did not want to try additional medications; (4) Plaintiff was in no obvious distress; and (5) Plaintiff "moves all 4 extremities without difficulty." *Id.* at 14-15. Somewhat ironically, these notations—specifically as to Plaintiff's normal gait, his ability to ambulate without an assistive device, his normal strength, and his ability to move all his extremities without difficulty—are the very type of evidence an administrative law judge would be entitled to rely on when discounting Plaintiff's testimony that he could not stand or walk for more than two hours at a time and when declining to include a

restriction for standing and walking. Accordingly, if anything, the treatment records Plaintiff attaches to his Motion for Remand support ALJ Bush's determination that Plaintiff is not disabled.[3] Therefore, Plaintiff has not demonstrated that the Caromont Regional Medical Records are "material" for purposes of sentence six remand under 42 U.S.C. § 405(g) and his Motion for Remand (Doc. 12) is **DENIED**.

      B.      Motion for Summary Judgment

            i.    *Standard of Review*

Pursuant to the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner is limited to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, if this Court finds that the Commissioner applied the correct legal standards and that her decision is supported by substantial evidence, the Commissioner's determination may not be overturned.

While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a scintilla and it must do more than create a suspicion of the existence of a fact to be established." *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (brackets and internal quotation marks omitted). Critically, "[t]he substantial

---

[3] Ultimately, however, it is up to the administrative law judge to determine, in the first instance, whether a claimant is disabled and state any reasons for finding that a claimant is not disabled. *See Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013). Thus while the Court must evaluate the additional records for purposes of sentence six remand, it cannot rely on the records to affirm the Commissioner's decision where the administrative law judge did not support her decision through reliance on substantial evidence, *see Smith v. Chater*, 99 F.3d 635, 638 n.5 (4th Cir. 1996) ("[I]n determining whether the [administrative law judge's] decision is supported by substantial evidence, a district court cannot consider evidence which was not presented to the [administrative law judge].").

evidence standard 'presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (ellipsis omitted) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988).

"In reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays*, 907 F.2d at 1456. Therefore, the issue before this Court is not whether Booker *is* disabled, but whether ALJ Bush's conclusion that Booker is *not* disabled is explained and *supported by substantial evidence* and that such decision was reached based upon a correct application of the relevant law.

ii.    *Analysis*

The Court finds Plaintiff's assignment of error relative to ALJ Bush's discounting of his July 2015 and August 2015 medical records dispositive as to the issue of relief in the form of remand under sentence four of 42 U.S.C. § 405(g) because ALJ Bush's decision to discount these medical records and not impose further restrictions based on the records is not supported by substantial evidence. As previously noted, Plaintiff's August 2015 MRI, the only medical imaging discussed by ALJ Bush relative to Plaintiff's back, revealed severe degenerative disc disease at L5-S1, moderate degenerative disc disease at L3-L4 and L4-L5 with moderate or minor spinal

stenosis, and mild degenerative disc disease at L-L3. (Tr. 86; *see also* Tr. 584-87). ALJ Bush, when forming Plaintiff's residual functional capacity, potentially relied on six reasons for discounting the effects of the degenerative disc disease identified by the MRI.

First, ALJ Bush commented on the proximity of Plaintiff's complaints about back pain to his date last insured, noting that Plaintiff's severe back pain originated approximately two weeks before his date last insured. (Tr. 86). ALJ Bush's decision, however, does not explain why the close proximity discredits his alleged symptoms and resulting limitations or mitigates the findings of the MRI. While the fact that Plaintiff did not complain of back issues until June 15, 2015 obviously provides substantial evidence for establishing that Plaintiff did not experience additional functional limitations relative to his back until June 15, 2015, it does not, absent further discussion, explain why he did not experience further limitations starting on June 15, 2015.[4]

Second, ALJ Bush noted that the MRI was performed after Plaintiff's date last insured. *Id.* That the MRI was performed after Plaintiff's date last insured is not automatically a proper basis for discounting the MRI results. *See Bird v. Comm'r of Soc. Sec. Admin*, 699 F.3d 337, 340 (4th Cir. 2012) ("Medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's [date last insured]."). Instead, where a medical test is conducted after a claimant's date last insured, the administrative law judge should give retrospective consideration to the test results if the test relates to pain and symptoms arising before the date last insured. *See id.* at 340-41. Here, Plaintiff's August 2015 MRI related to the alleged exacerbation of his back pain that he

---

[4] To the extent that ALJ Bush found Plaintiff "not entirely credible" an inference might be drawn that ALJ Bush believed Plaintiff reported his complaint of back pain just before his date last insured with his application for disability benefits in mind. While such a conclusion could constitute substantial evidence if properly explained, any inference in this case requires the Court to speculative such that a logical bridge does not exist between ALJ Bush's discussion of the proximity of Plaintiff's back claim to his date last insured and ALJ Bush's decision not to incorporate further restrictions into his residual functional capacity.

reported two weeks prior to his date last insured and the MRI revealed a chronic and progressive disease—degenerative disc disease—that was likely present, in some form, before Plaintiff's date last insured. Accordingly, if ALJ Bush's comment about the MRI occurring after Plaintiff's date last insured was a reason for not incorporating further restrictions into Plaintiff's residual functional capacity, the reason does not constitute substantial evidence and would be improper.

Third and fourth, ALJ Bush stated that Plaintiff's demeanor when testifying about his daily activates discredited Plaintiff and that the daily activities Plaintiff listed on his function report form were inconsistent with Plaintiff not being able to stand and walk for more than two hours at a time. (Tr. 86-87). ALJ Bush failed to provide any insights into what it was about Plaintiff's demeanor that made him incredible or which specific statements of Plaintiff were incredible. *See id.* This lack of a logical bridge is problematic given the timing of when Plaintiff's back condition worsened relative to his self-reports of daily activities. Absent further explanation by the administrative law judge, it is not possible for this Court to know whether Plaintiff was incredible relative to his limitations up to June 15, 2015 or incredible relative to the entire disability period up until his date last insured. *See id.* This is particularly true where the function report form ALJ Bush relied on to discredit Plaintiff's hearing testimony about his daily activities was completed on March 12, 2013, more than two years before Plaintiff reported severe back pain to his doctor and underwent the MRI. (*See* Tr. 207). The fact that Plaintiff completed his function report form over two years before reporting severe back pain and undergoing the MRI also prevents ALJ Bush's reliance on the function report form from amounting to substantial evidence regarding Plaintiff's functional limitations starting on June 15, 2015 and going forward.

Fifth, ALJ Bush relied on Plaintiff's activity as a brick layer and brick layer supervisor to conclude that the findings in the MRI did not necessitate a restriction for standing or walking. (Tr.

86). While Plaintiff's work activities might provide substantial evidence for not including additional restrictions during the period of time when Plaintiff was performing work as a brick layer and brick layer supervisor, it does not constitute substantial evidence regarding Plaintiff's ability to stand and walk as of June 15, 2015 given that Plaintiff last performed brick laying work in 2014.  (*See* Tr. 168, 171; *see also* Tr. 29-31).

Sixth, ALJ Bush relied on the opinions of Dr. Whitaker and Dr. Huffman-Zechman to conclude that Plaintiff did not need a restriction for standing or walking.  (Tr. 87).  Dr. Whitaker performed his physical examination and drafted his expert opinion in mid-2013.  (Tr. 385, 389).  Dr. Huffman-Zechman rendered his expert opinion on October 22, 2013.  (Tr. 73).  According, Dr. Whitaker and Dr. Huffman-Zechman did not examine Plaintiff after his back condition allegedly worsened and he was allegedly experiencing severe pain.  Therefore, while Dr. Whitaker and Dr. Huffman-Zechman's opinions provide substantial evidence for concluding that Plaintiff did not suffer from limitations requiring restrictions for standing and walking in 2013 and even up through June 2015, the opinions are of very limited value with respect to Plaintiff's limitations following the alleged worsening of Plaintiff's back condition in June 2015.[5]

In sum, Plaintiff alleged that he experiencing a significant worsening of his back pain in June 2015 and that the worsening of his back condition contributed to his limitations with respect to standing and walking.  Plaintiff's 2015 MRI results revealed a chronic and progressive condition that could have produced pain and symptoms limiting Plaintiff's ability to stand and walk.  While ALJ Bush's reasons for not incorporating further restrictions amount to substantial evidence for finding that Plaintiff did not experience the alleged limitations up until the point when his back allegedly worsened in June 2015, the reasons stated by ALJ Bush do not provide substantial

---

[5] Absent from ALJ Bush's decision is any clear conclusion that Plaintiff fabricated the worsening of his back condition in June 2015.

evidence for discounting the 2015 MRI results and finding that Plaintiff was incredible with respect to his limitations from mid-June 2015 going forward. Accordingly, remand is necessary under sentence four of 42 U.S.C. § 405(g) to provide the Commissioner an opportunity to further explain ALJ Bush's determination that Plaintiff did not experience further limitations and did not need further restrictions to account for the alleged worsening of his back condition in June 2015.[6]

## III.  DECRETAL

**IT IS, THEREFORE, ORDERED THAT:**

(1)     Plaintiff's Motion for Remand under sentence six of 42 U.S.C. § 405(g) (Doc. 12) is **DENIED**;

(2)     Plaintiff's Motion for Summary Judgment (Doc. 11) is **GRANTED**;[7]

(3)     Defendant's Motion for Summary Judgment (Doc. 13) is **DENIED**; and

(4)     The decision of the Commissioner is **VACATED** and this matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative consideration consistent with this Order.

Signed: June 20, 2017

Richard L. Voorhees
United States District Judge

---

[6] Having concluded that the error with respect to discounting Plaintiff's 2015 medical record and MRI results requires remand, it is unnecessary for the Court to address Plaintiff's remaining assignments of error where Plaintiff's Motion for Summary Judgment seeks relief only in the form of a remand for further consideration. Furthermore, this Court's determination that remand is required for further review and explanation of Plaintiff's functional ability as of June 2015 should not be viewed as this Court suggesting that Plaintiff was actually disabled starting in June 2015. *See supra* at 8.

[7] To the extent Plaintiff's Motion for Summary Judgment (Doc. 11) only seeks relief in the form of a remand for further administrative proceedings, rather than relief in the form of a judgment as a matter of law regarding whether he is disabled and entitled to benefits, the Motion is **GRANTED**.